**HEARTLAND HOSPITAL, Plaintiff,**

**v.**

**Gary STANGLER, Director of the Missouri Department of Social Services, and Donna Checkett, Director of the Division of Medical Services of the Missouri Department of Social Services, Defendants.**

**No. 91–1122–CV–W–1.**

United States District Court, W.D. Missouri, W.D.

April 22, 1992.

Ronald A. Norwood, Lewis, Rice & Fingersh, St. Louis, Mo., and Patrick Hooper, Hooper, Lundy & Bookman, Los Angeles, Cal., for plaintiff.

Perry Brandt, Stinson, Mag & Fizzell, Kansas City, Mo., for defendants.

## ORDER

WHIPPLE, District Judge.

Before the Court is Defendants' Motion to Dismiss, filed January 29, 1992, wherein defendants Gary Stangler, Director of the Missouri Department of Social Services ("DSS") and Donna Checkett, Director of the Division of Medical Services assert that plaintiff's Complaint should be dismissed, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), for lack of subject matter jurisdiction and also for failure to state a claim upon which relief can be granted. For the reasons set forth in the following discussion, the Court grants the defendants' motion to dismiss.

Plaintiff Heartland Hospital, an inpatient psychiatric hospital located in Nevada, Missouri, filed this action seeking injunctive and declaratory relief against defendants with regard to certain Medicaid reimbursement rates promulgated by DSS. Specifically, plaintiff seeks to contest the propriety of a "per diem cap" set by DSS for reimbursement for inpatient psychiatric services. As presently promulgated, the DSS regulation limits health care providers, such as plaintiff, to "the lower of the hospital's Title XIX per diem rate or an inpatient psychiatric per diem of [now $282.42]." 13 C.S.R. § 70–15.010(16)(A). This latter figure is based upon calculating "one hundred ten percent (110%) of the 1988 weighted average cost for in state, freestanding, nonstate operated psychiatric units." 13 C.S.R. § 70–15.016(16)(B).

In its Complaint, plaintiff alleges that this "per diem cap" is in "non-compliance with the governing federal Medicaid law," 42 U.S.C. §§ 1396, et seq. More specifically, plaintiff asserts that the DSS has failed to comply with 42 U.S.C. § 1396a(a)(13)(A) ("the Boren Amendment"). The Boren Amendment is the federal legislative mechanism for enabling the states to set standards regulating "provider reimbursement" under the federal Medicaid Act. A primary purpose of the Boren Amendment was to reduce overall Medicaid expenses by allowing individual states to set their own reimbursement rates without burdensome federal oversight and by permitting states to develop payment systems that would promote efficiency through cost reduction incentive policies. *St. Michael Hospital of Franciscan Sisters, Inc. v. Thompson,* 725 F.Supp. 1038, 1048 (W.D.Wis.1989). According to plaintiff, any state reimbursement rate must:

1. provide for payment rates for hospital inpatient services which are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated facilities, and

2. take into account the situation of hospitals that serve a disproportionate number of low income patients.

Plaintiff contends that the DSS regulations fail to meet this criteria.

Defendants have moved to dismiss plaintiff's action, asserting, among other grounds, that this Court lacks subject matter jurisdiction in this case "pursuant to the doctrine of primary jurisdiction." However, it is clear that the availability, and the potential primacy, of administrative review does not divest this Court of jurisdiction to hear the § 1983 claim. In *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), a case presenting a challenge to a state Medicaid reimbursement scheme as being violative of the Boren Amendment, the Supreme Court held that the Boren Amendment is enforceable in a § 1983 action for declaratory and injunctive relief brought by health care providers. *Id.* 110 S.Ct. at 2524. Moreover, the Court found no "indication that Congress specifically intended that this administrative procedure [mandated by the Boren Amendment] replace private remedies available under § 1983." *Id.* The availability of state administrative procedures ordinarily does not foreclose resort to § 1983. *Id. See also, Patsy v. Board of Regents,* 457 U.S. 496, 501, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982) (exhaustion of state administrative remedies is not a prerequisite to a § 1983 action); *Wright v. Roanoke Redevelopment & Housing Authority,* 479 U.S. 418, 427–29, 107 S.Ct. 766, 772–73, 93 L.Ed.2d 781 (1987) (the existence of state administrative and/or judicial remedies does not

bar an action under § 1983). Thus, it is clear that the instant action falls well within this Court's jurisdictional parameters.

 Notwithstanding the foregoing conclusion, in certain circumstances, a federal court may properly abstain from exercising its jurisdiction when its decision on an issue of state law would disrupt a state's effort to establish a coherent state policy in an area of significant local concern. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Burford* abstention is proper when "the exercise of jurisdiction by the federal court would disrupt a state administrative process." *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). More importantly, *Burford* abstention is necessary when federal review would likely be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976). It is the opinion of this Court that such an instance is presented by the case at hand.

At least two courts have considered the applicability of *Burford* abstention in cases challenging state Medicaid regulations pursuant to the Boren Amendment. *Virginia Hospital Association v. Baliles,* 868 F.2d 653 (4th Cir.1989), affirmed on other grounds, *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (Fourth Circuit Court of Appeals finding *Burford* abstention did not apply); *St. Michael Hospital of Franciscan Sisters, Inc. v. Thompson,* 725 F.Supp. 1038 (W.D.Wis.1989) (finding *Burford* abstention properly invoked.)

Neither of these opinions disputed that state by state regulation of Medicaid reimbursement was an area of comprehensive state regulation based upon predominantly local factors. Indeed, the Supreme Court has noted that a classic application of the *Burford* abstention doctrine would encompass a "claim that a state agency ha[d]

misapplied its lawful authority or ha[d] failed to take into consideration or properly weigh relevant state-law factors ..." *New Orleans Public Service, Inc. v. New Orleans,* 491 U.S. 350, 362, 109 S.Ct. 2506, 2514–15, 105 L.Ed.2d 298 (1989).

In *Virginia Hospital* the Fourth Circuit Court of Appeals concluded that *Burford* abstention did not apply to an action brought by a *class* of hospitals challenging the Medicaid reimbursement plan enacted by the State of Virginia. The Court declined to abstain based upon its reliance upon the district court's finding that the class of hospitals "could not have prosecuted its claims through the administrative appeals apparatus [in Virginia]." *Virginia Hospital Assoc.,* 868 F.2d at 665. Specifically, the court concluded that the state administrative appeals process did not "authorize appeals by *class* representatives." *Id.* at 661, f. 9.

Conversely, in *St. Michael Hospital,* the district court distinguished the conclusion of the court in *Virginia Hospital Assoc.:*

> [U]nlike the situation in *Virginia Hospital Association,* the appeals apparatus in place in Wisconsin is specially suited to consider plaintiff's grievance; plaintiff is bringing an individual challenge against defendants for using insufficient data in the calculation of its reimbursement rate and that state agency is empowered to recalculate this rate if the plaintiff raises discrepancies that the agency has determined warrant consideration.

*St. Michael,* 725 F.Supp at 1045. Thus, the court concluded, "in light of the predominantly local factors under consideration [with state Medicaid reimbursement rate-making] and the existence of adequate state court review of the administrative hearings," *Burford* abstention was properly invoked. *Id.*

Similarly, in the case at bar, the Missouri administrative framework provides adequate avenues of redress for plaintiff's allegations.[1] In providing these procedures,

---

1. In its Complaint, plaintiff acknowledges that it has never sought administrative review of the reimbursement rates presently claimed to be violative of the Boren Amendment mandate.

Missouri has complied with the requirement set forth in 42 C.F.R. § 447.253(C):

The Medicaid agency [of the state] must provide an appeals or exception procedure that allows individual providers an opportunity to submit additional evidence and receive prompt administrative review, with respect to such issues as the agency determines appropriate, of payment rates.

Pursuant to the above authorization, Mo. Rev.Stat. § 621.055 states:

Any person authorized under section 208.153, RSMo, [which permits the Division of Medical Services to define reasonable costs, charges and fees for medical services by rule and regulation and to pay same to providers with Medicaid agreements] to provide services for which benefit payments are authorized under section 208.152, RSMo [which sets forth those medical services for which Medicaid payments will be made], may seek review by the administrative commission of any of the actions of the department of social services specified in subsection 2, 3, or 4 of section 208.156, RSMo.

Also, Mo.Rev.Stat. § 208.156.4 states:

Any person authorized under section 208.153 to provide services for which benefit payments are authorized under section 208.152 who is aggrieved by any rule or regulation promulgated by the department of social services or any division therein shall be entitled to a hearing before the administrative hearing commission pursuant to the provisions of Chapter 621, RSMo.

Plaintiff argues that the Missouri Administrative Hearing Commission lacks the authority to declare a regulation of DSS invalid pursuant to *State Tax Com. v. Administrative Hearing Commission*, 641 S.W.2d 69, 75–76 (Mo.1982) (*en banc*). However, subsequent Missouri Supreme Court cases have narrowly interpreted *State Tax Commission* to have "held simply that the legislature could not give the [Administrative Hearing] Commission the authority to render a *declaratory judgment* as to the validity of rules of [a state administrative agency]. *Bridge Data Company v. Director of Revenue*, 794 S.W.2d 204, 207 (Mo.1990) (*en banc*) (emphasis added). In the instant case, plaintiff need not resort to a declaratory judgment in order to question the appropriateness of the application of the DSS per diem rule—rather, such a challenge could, and should, be made in an "as applied" specific case. In the latter instance, "when review of [such] decisions of the [DSS] is sought, the Commission *must* resort to the statutes and has full authority to reach a decision on the law as it finds it, subject, of course, to judicial review." *Id.* (emphasis added).

Based upon the foregoing Missouri case law and statutes, the Court finds that plaintiff has a meaningful appeals procedure within the state administrative system. While the availability of this relief does not foreclose § 1983 action, it is relevant to the determination as to the appropriateness of federal court intervention into this comprehensive and predominantly local administrative area. The exercise of *Burford* abstention, when the underlying prerequisites are present, is a matter entrusted to the sound discretion of the district court. *Government Employees Ins. Co. v. Simon*, 917 F.2d 1144, 1148 (8th Cir.1990). Under the circumstances of this case and in exercise of that discretion, the court abstains from interfering in the State of Missouri's attempt to establish a coherent policy in this matter of substantial public concern.

Accordingly, it is

ORDERED that defendant's Motion to Dismiss, filed January 29, 1992, is GRANTED.